19-0477. Today's insurance company is Charles Coperty & Capital Company of America, with Pelco Structural, LLC. Counsel, please step forward. Good afternoon, Your Honor. Good afternoon, Your Honor. Andrew Lesnar, on behalf of the defendant, appellant Pelco Structural. And for plaintiff attorneys, Mike Rieses from Smith-Owens. Thank you. I assume you want to reserve. I'd like to reserve three minutes. Okay, that's fine. And again, I'll just emphasize this is only for recording, not for amplification, so keep your voices up. Thank you very much. May I please the court, Counsel? An insurer has three options when it's being presented with a claim by an insured. It could say that there is no coverage, and it can deny. It can say there is coverage, and it can accept. Or it could say that it's not sure, and it can accept under a reservation of rights. This allows the insurance company to investigate the claim thoroughly, determine if there's coverage, and if so, to what extent, while not waiving any of the policy rights that it has for any sort of events that come up later. What Phoenix Insurance Company is asking this court to do is to create a fourth option, deny under a reservation of rights. This would allow a company to frame. Where would they reserve their rights? They deny the claim. They deny the claim. Well, you said that was one of the options. Not accept the claim. Deny. That was the end of it, wasn't it? That is, Your Honor. But what they're trying to do is deny the claim while still then, if the coverage decision changes based upon future information that they get from one way or another, they want to have all the rights under the policy that they are stopped from having based upon their denial. No, but this is a different situation. I mean, you agree that the claim made was not covered. I mean, your own president or officer admitted it. The information that Phoenix had. At that time. At that time. Before the lawsuit that they made the claim, it was not covered, correct? Correct. With the information that was available at the time, there did not appear to be coverage. But in the coverage letter and in the notes of the Phoenix Insurance Company, they know that there might be coverage depending on what comes on later. Okay. So something came out later. You got a lawsuit. Which is exactly why you don't deny without doing any sort of investigation. They don't need to investigate. You can just concede it again. It was, there wasn't a claim. The claim that came in was not covered. They're done. So here's my question. Sure. Why did you ever, why did you ever send them something?         and we were, we were trying to get information in, because we really didn't have the time. And even over two years past, two or three, whatever the number of years, two or three years past, they, if we think they're psyched. But why did he even make a claim then? Why, Sue, why did you notify him at all? He notified me at all because, based upon the deposition testimony that came out. Oh, so, wait, so what about the deposition? What about the deposition testimony that, and the policy, what says in the policy about a deposition policy, deposition? Nothing, Your Honor. At that point, the litigation counsel, which was hired, was doing depositions in this case. They had actual, actionable information from a witness of Exelon or ComEd that there was additional, maybe, property damage that had occurred on the original date. This is not. Wait, wait, wait. They had that way before. Didn't they have it at the time of the lawsuit? They had. They had to take a deposition, right? Right. Answer me. Sure. Do you have to take a deposition to know that Exelon is claiming property damage? In this case, yes. Do you? Yes, Your Honor. Why? Because they're claiming with a complaint. I disagree, Your Honor, respectfully. The complaint notices that there might be other damage. There are then, there are arbitraries that came out later, which seem to clarify the issue a little bit more. Then, during deposition, as we all know, claims from complaints often change once the, you know, you can do a deposition on a lost wages claim in a personal injury lawsuit, only to find out that they're now making a lost wages claim. Once the deposition testimony came out that indicated that there was property damage that they were going to be claiming, the litigation counsel contacted Pelko. Pelko contacted Phoenix. They submitted the information again. What's important is that the information about property damage existed at the time that Phoenix made the denial. But Phoenix didn't do anything to find out that it existed. On February 20th. They denied the claim. They denied the claim. They said, well, keep it. We have a file. Notify us if something happens. And that's what the policy said. It said if you get a suit, it says if you get sued, you should notify them. That's not in the denial letter, Your Honor. No, that's in the policy. Claim or suit, Your Honor. No, the claim was denied. Sure. The claim was denied because Phoenix did no investigation to determine what the elements of damage were that existed. Some people even agreed. It's in the record. They agreed there was no viable claim at that time. I think that they agreed that Phoenix did not have the information because we did not have the information. Phoenix even told, according to the record, they even told their claim that we're closing this file. If something happens, let us know. And that is a flat denial, Your Honor. Based upon the information that they had, because they did no investigation in this matter, the investigation consisted of one phone call with the president of Palco Structural. He said, what information do you have? Based upon that, within two days of receiving the claim, Phoenix denied coverage. They then included a general, hey, if you know any information that would change your decision at this time, please let us know, which Palco didn't. All Phoenix had to do was call Exelon, maybe take more than two days to do an investigation, contact the other people involved, find out that elements are actually at issue here, and investigate. And this goes right to the – So what duty then did Palco have to advise of the lawsuit? You believe none because the claim had been previously denied. Exactly, Your Honor. But here's the problem there, because even if an insurance company is going to ultimately deny a claim, they are still required to defend under a reservation of rights. And they never had an opportunity to do that because Palco went out and hired its own counsel to move forward with the lawsuit without ever advising Phoenix that there was a lawsuit filed. Phoenix, after frankly denying the claim, continued to communicate with Palco for a couple of months. During those communications, Palco Structural was very clear that Exelon was continuing to pursue this action against them. Phoenix then stopped contacting Palco. They then closed their file. They're trying to shift the burden onto Palco Structural to make them do all the work. And what they want to do is they want to do no investigation. We're just talking about living up to the contract of insurance. And the contract of insurance said, if you get sued, you better notify us as soon as possible. The contract of insurance says that the duties in the event of an occurrence, offense, claim, or suit are as follows. It's undeniable that Palco gave proper notice of the occurrence and the claim within a timely manner. That's not being disputed. At that point, if, as Phoenix stated in their briefs throughout their notice, they thought that there might be coverage, they wanted to wait, then you wait. You accept under a reservation of rights, or you don't make any decision. You say, you know what, we're going to do an investigation. We're going to do, like, the PQ Corporation case. We're going to have a seven-month investigation. We're going to hire independent adjuster, and we're going to call the parties actually making the claim to find out the damage elements. Phil Arbert, Palco Structural, had no notice of this at the time. And if we look at the actual denial letter here, there is a, well, the Davis case, 1980, this is the controlling case here. They don't make a difference between flat and non-flat denials. Davis says that if you, to quote them, a failure to forward documents concerning the subsequent suit would be understandable. Any such failure that may have occurred must be viewed as a consequence of the insurer's own conduct in flatly denying coverage. The only way that Phoenix can try to attack this is they have it in three ways. They say that Davis had a pro se insured. Well, I understand. But Davis is so important here because we have to look at the contract, and we need to look at the circumstances. The law says we look at the circumstances of this case. That's what we have to do, the totality of these circumstances. I don't care what happened in Davis. It's a different situation. It could be distinguished. Maybe you don't distinguish it. Whatever. We have the facts here. And so we are looking at what happened here. Yes, and what we need to look at here, Your Honor, is the denial letter. Because you have an insured who makes the claim that's in a timely manner to his insurance company, and then he gets a letter back that tells him what's going on. Within that letter, there is no directive like there was in the Navicar case that Phoenix cites. There was no directive to forward information from a subsequent lawsuit to them. There's no directive to do anything in this matter. It's in the policy. It's in the policy. But it's not a learned denial letter, Your Honor. They're summing up, and I don't think that any part of the policy that you're quoting here is in the briefs of Phoenix where they're claiming that there's a separate notice provision in this. The notice provision is from Section 4, Part 2 under conditions, which states that you must notify as soon as practical of an occurrence and a claim or suit. Claim or suit, not claim and suit. Let me read from the letter. It says, if you disagree with our coverage position, which was to deny coverage, or have any other information or documentation that you, that's you it's talking about, your client, believe would affect our coverage determination, please immediately forward those materials for review and consideration. Yes, Your Honor. And you can do that. And we don't need to, because they're stopped from raising that as an issue now. Because of the PQ Corporation case, which is persuasive authority, as is Malachar, PQ Corporation dealt with practically the exact same denial language. PQ Corporation, should you have any other information you feel may be applicable or relevant to this matter, please immediately forward it. The Seventh Circuit Court of Appeals in 2017 said that that is a vague and open-ended invitation and it does not neutralize the effect of the explicit denials of coverage. The insurer could always change its mind about coverage. Having received the denial letters and no offer of defense under a reservation of rights, which is what I'm saying they should have done here, the insurer had no reason to believe that further communication of the insurance company would serve any purpose. That is the law. And that's the law because that's the Seventh Circuit case. That's the Seventh Circuit, which is also interpreting Davis. But, again, we have to look at circumstances here. I mean, again, when you cite a Federal case like that, unless it's the United States Supreme Court that says something on this issue, you have no obligation. But to me, that case can be differentiated, which they do. They don't, Your Honor. They say it's differentiated because, well, they claim that the language is dicta. Ten paragraphs of information are resolving a district court decision where they came to then the opposite conclusion. It doesn't appear to be dicta in this matter. They point to Malachar. The only case that they can point to against Davis, the only way to get out of Davis, is to point to a Northern District of Illinois case from 2011, which the PQ Corporation case also distinguished. So there's no way to get around Davis. Do you believe that the same issue exists here, that they're claiming that it was not really a denial, the same thing that happened in the PQ case? The PQ Corporation factual scenario with the denial letter, it's eerily similar, Your Honor. It is a denial with a vague open-ended invitation to let us know if you have more information that, you know, right now that would maybe change our determination. And that's all. And that does not stop. That does not do anything for the insurance company. If it does, I mean, what we have to go back here and look at is we have a two-day investigation. PQ Corporation was seven months. So actually PQ, the 7th Circuit case, is actually more like this case than even Davis is. Yes. Absolutely, Your Honor. Because it's almost on all four. Yes, Your Honor. Davis had, you know, it's our position that Malachar, as we stated, it's persuasive at 30. I think it's wrongly decided because it's Malachar. Malachar. Because it's creating a mix. It's creating this, it's muddying the waters of Davis. Davis says, you know, denial is a denial is a denial. If you deny, you're stopped from doing anything else, you know, raising further late notice issues. Malachar says, well, if you include this very explicit directive, then, you know what, you can get by and, you know, get aside from this duty to defend. Then we have PQ Corporation which says, you know what, I'm going to look at Davis. I mean, PQ Corporation talks about Davis. It talks about Malachar. And it says, this is not a Malachar type situation. They said, our vague open-ended invitation is more similar to the Davis denial language than it is to the Malachar specific directive. That's why you have the ability to deny, accept, or accept under a reservation of rights. The fact of the matter is Phoenix Corporation jumped the gun on this. They took no time to do an investigation. They did nothing that we as a court want to encourage insurance companies to do. They're trying to take the burden that they have to determine if there's coverage and flip it on its head. Now the insurer has to interpret these policy letters. Was that issue before the trial court, though, as to whether or not this was a flat denial? Yes, Your Honor. It is. The trial court ultimately found that it was a soft denial. The trial court basically – It's not the term that the judge used. Sure. It's the flat or non-flat. The trial court had those arguments in front of it. Ultimately, it briefly acknowledged the existence of other arguments that Pelker was making. But ultimately, they decided that it was simply the late notice itself of the alleged late notice of the lawsuit that was what mattered here. And they said under the policy – Look, and that's why we have Davis, and then we have persuasive authority. No matter which way Phoenix goes, they can't get around the law. Either Davis controls, which then they're stopped, or you want to look at the persuasive authority of which PQ Corporation – A lot of charges were signed in 2011 by the Northern District, and the Seventh Circuit decided the PQ case in 2017. 2017. So they can't get away from this. We're going to discuss which case we follow. We follow the Seventh Circuit. We stand by that, Your Honor. We're just playing it out. We don't know which way this is going to go. So essentially, your point is when this occurrence occurred, you notified the insurance company. They turned you down. Right away, yes. Turned you down and said, you know, if you get any more information, we'll be happy to look at it. Yeah. And at that point, you're saying they're stopped from saying any future notices that the policy may provide for, you're stopped from raising because you've denied the claim. Exactly, Your Honor. And you did nothing ultimately. We engaged in four months of communications with them on a timely basis. Every time that they called us, our person called them right back and was consistent that they were continuing to pursue the claim, at which point those calls to us stopped. And if you look at the notes. Then you got sued. We did. And did you notify them of that lawsuit? We did in March of 2019 after it became clear to litigation counsel. Yes. And we look at the notes of Laura Pytel, which is the Phoenix Insurance Company rep who made this decision. It's clear that she never advised HELCO at any point in time that they should let Phoenix know if a lawsuit was happening. What we have is we have a very important note from August 31st, I believe, 2015. It says, We'll advise insured if slash when a suit is filed to send in and we can review for coverage. This is August 31st, 2015. Phoenix never spoke to us after July 9th, 2015. So even here, I don't know if they were going to. But that notice was after July 2015. Exactly. And so they never communicated this. No, this is an internal claim note. They never spoke to us after July. So in August, at the end of August, her own file is noting, we should advise them about the specific directive, as the Malachar case would have, that if a lawsuit is filed, they should let us know so we can determine if there's coverage. So do you believe, then, that the issue here would be, if we were to agree with your argument, that there still would be no identification for the period of time during which you defended yourself without notifying them of the litigation? Would you agree with that? I'm sorry, Your Honor, I wasn't following that. If we were to agree with your argument that they were barred from actually because they had previously denied the claim, you're not required to now notify them any further of anything else. That's correct. If we were to agree with that, and now you did subsequently notify them, I believe you said in March. I believe, yeah, March 2018, yes. So, therefore, they would not be required to indemnify you of any litigation caused prior to your notifying them. No, Your Honor, their stop, their date is March 10, 2015. That's when they denied. They are on the hook forever in the policy provisions. So do you believe, even though your client decided to engage in its own litigation costs and get its own litigation course without the involvement of the insurance company, that the insurance company is still responsible for that, even though they were never notified? I believe the PQ Corporation refers to this as strong medicine, that the insurance company less likely. And it's just something I told you already. We're not bound by that. Oh, no, I'm just saying that you have strong medicine, Your Honor. We can take some parts of PQ and some parts of Davis and some parts of Mellick. And what Davis says is that in that case. We can give you what's right. Sure. In Davis, what's right here, and what Davis said, is that in Davis there was a judgment. They had gone through the whole thing. There was a judgment in Davis, and the judgment was being. . . In Davis there's an appellate court case, correct? Yes, there is. So there's nothing that we're bound by. No. All the cases that's being cited. But it's all various degrees of persuasive. And they're all consistent with each other. I'm just a little sorry to say this, but otherwise we're not bound by. . . They're all consistent with each other. As long as this court rules that they are stopped and that this language. . . The only way to throw a wrench into the current insurance coverage case law is to find that they acted appropriately in this case. Because now we have a big, giant distinguishment between Davis, PQ Corporation, and in this case. So we have a 2017 semester of the court of appeals. Are there any time-published decisions on this issue? I don't believe so, Your Honor. I think that it's all published. I'd have to double-check on that just to make sure. Maybe counsel let me know if I'm wrong on that. But in addition, Your Honor. . . Actually, I'm sure my time must be up. I'm happy to address the other aspect of my case I'd like to talk about, which is the ambiguous language of this policy regarding notice of provisions. But I'm happy to save that for rebuttal. No, it's absolutely fine. Thanks. Thank you. Let's see if it becomes an issue. Good afternoon, counsel. May it please the Court. Again, my name is Mike Reces, and I'm here today on behalf of the appellees. I'm going to start with, I think, the observation that Presiding Justice Hyman made about considering the totality of the circumstances in this case. The record shows that beginning with our letter of March 10, 2015, PELCO knew that damage to Exelon's own property was potentially covered. We covered this very detailed in the letter, where we said, as an example of what would be potentially covered, there are no allegations that the PELCO pulls or dimming arms physically damaged any Exelon's cables or other property. So at the time that we are denying coverage for what counsel concedes was not covered damages, we gave an example of what would be potentially covered. PELCO's sophistication is shown by the fact that it purchased an umbrella policy and it had hired counsel experienced in coverage. Now let's jump ahead just a moment to the complaint that's filed January 16 of 2016. Well, why is that to their detriment? I'm sorry. If their insurance company, if their insurance company, Phoenix, is not responding to their claim, why wouldn't they get experienced insurance coverage? Well, they were responding to the claim, Your Honor. We have presented in the record Laura Patel's unconfirmed, addicted, affidavit, and claim log entries. I only raise that because you make it sound like it should be held against them that they went out and got experienced insurance coverage. Those are simply a factor that courts look to in determining whether the insured was acting reasonably and diligently in ascertaining the potential for coverage. It's not being held against them. It's just a factor that courts recognize, or other factors, recognize in terms of ascertaining coverage. Your Honor made the comment about what was happening after the March 10 letter. We have the claim log entries. Let's go to the first one from March 12, two days after the letter. And we have the claim professional saying that should the claim be pursued or sued, filed, we can, quote, re-review based on what Exelon is looking for, close quote. Doesn't sound like a flat denial to me. It's left open. Who is that information communicated to? To the president of PELCO, Phil Albert. Let's go to another communication. July 9, 2015. Laura Patel is following up. You know, it's funny. There's all this characterization of a flat denial, but she keeps on calling him. Doesn't sound like a flat denial if she's the one who's making the phone calls. She's talking to Albert, and again, this is what he says. He says Exelon is pursuing the matter, so we know that much. Okay. And then Albert says, awaiting additional information, and he will decide, that's PELCO will decide, whether the matter needs to be, quote, re-presented, close quote, to the insurance company. He's saying he's going to decide whether to re-present the claim. That's the last time he communicates with her. Her position is, the burden was on you, and he didn't need to do that. Whether he said it or not is irrelevant. The fact is, under the case law that they cite to, that was irrelevant. That's based on a flat denial. If it's a flat denial, uncritical denial, that might be true. This is not a flat denial when she keeps on communicating with him and saying things like, if suit is filed, we will re-review. And Albert says, okay, and he will decide, after getting additional information, whether the claim needs to be, quote, re-presented, close quote. The policy provided has to be re-submitted. The policy puts the burden, it's a condition precedent, on the insured to provide notice of whatever, if it's a claim or a suit. Well, he's saying that it was a claim, and they provided notice, and that was the end of their obligation. That's his argument. I understand that. But they're also saying that what they knew and what they told us in February of 2015, when Exelon first made the claim, was damage that was not covered. It was only for the cost of removing and replacing the defective product in the third-party testing. They don't dispute. That wasn't covered. We didn't leave it there. We kept on following up with them. Only for a few months. I'm sorry? Only for a few months. Up through July, up through July until they say they'll decide whether to re-present. And by the way, at that point, at the end of July, they knew that Exelon was claiming damage to their own equipment, because they wrote a letter, they wrote a letter at the end of July, and records said 1161. They say to Palco that part of their damage is repairing insulators and the transmission line damaged when the arm failed. So Palco knew, certainly at the latest by the end of July of 2015, that Exelon was making a claim, potentially covered, mirroring what we had said in the letter of March 10, and they didn't ever communicate that to us. Now, I want to get to the complaint, because that was, I think, one of the first questions that was asked of opposing counsel when he addressed you. Paragraph 3 says quite clearly, One of the Palco-supplied arms broke apart at its weld, crashed approximately 80 feet to the ground, breaking another arm on its way down, and interfering with other equipment on the circuit. Paragraph 22 says that the arm suffered a complete failure at the weld joint, crashed to the ground, here it is, caused damage to another conductor arm on its way down and to other equipment on the transmission line. So they knew, in terms of a lawsuit, at the time they served with a complaint that there was potentially covered damage to Exelon's equipment. That's in January and February of 2016, but they don't tell us until March of 2018. That's more than two years later. And that's all undisputed. Totally undisputed. We have Laura Patel's affidavit. We have the claim log entries. They never presented anything counter-evidentiary to support their argument that this was a flat-out denial. So you're saying it's not a flat-out denial? Now, why don't we keep on following... No, no. I'm asking you. Yes. Was the initial letter a flat-out denial? No. My question was the same question, but slightly different. Okay. Did the trial court make a finding on that issue? Because it sounds like a factual question. It's not a question for you to answer. It was a question for the trial court to answer. The trial court made its reasoning very clear. It was an extremely late tendering of the suit. So it's not a question. Can I go back to Justice Pierce's question that he just asked you? Yes. He asked you was it a flat-out denial. And I'm asking you. I'm not asking you to answer it. I'm asking you, what did the trial court rule? The trial court said that given notice of the cost claim, because we refer to it as a cost claim, in February of 2015, did not relieve Palco of it. See, that's not the question, though. That's not the question that I'm asking. I'm getting to a much issue that I think goes to the heart of this case. Okay. And that's the finding of the trial court. The trial court made the findings. We don't make factual findings. The only thing we do is decide whether or not they're against the manifest way to the evidence. And what I can tell you, based on the reported proceedings, that Judge Hall found that the cost claim was different from the suit because the suit contained these allegations of third-party potential damage. Since you're not able to answer my question, I'll see if counsel is able to answer yours. I'm sorry. I really feel as though I want to answer your question. Well, go ahead and answer it. Well, what did the trial court say? Did the trial court say that your first letter was a straight-out denial? Did she rule on it? Yes or no? She did not explicitly address that contention. So your answer is she didn't rule on it. She didn't have to. No, your answer is she didn't rule on it. She didn't rule on it. Thank you. Okay. She didn't rule on it. She had everything in front of her. And she was able to determine, based on the undisputed facts, that Palco knew of the potential third-party property damage claim at the latest by January of 2016 and failed to provide notice for two years. And we have said a number of cases in our brief that lay out that when you have a delay of two years or more, that is unreasonable notice as a matter of law. It's not a fact question. There was nothing counter-evidentiary to rebut Laura Patel's affidavit. Now, we do hear this argument that it would have been futile for Palco to forward the complaint sooner because it was a flat-out denial. The affidavit makes it clear it was not flat-out. If it's a flat-out denial, she would not have been communicating with Phil Albert. She would not have said, and it's undisputed, that if a suit is filed, we will review coverage. And the surest evidence of the fact that it was not a flat-out denial was what happened when it was tendered to us initially. I have a policy if an occurrence takes place in the insured notified Phoenix that I had an accident. Yes. Two years later, they get sued. Phoenix has been involved during that whole two years. They were aware of it. The insured gets sued. Would they then be required to send a second notice to Phoenix saying, by the way, we got sued? Yes. So you're requiring two notices. Yes. Under this policy, are you saying that Phoenix is entitled to two notices, two separate notices? Actually, I would say three notices. Notice of an occurrence, discrete event number one. Notice of a claim, discrete event number two. And notice of a lawsuit, event number three. Vega v. Orr answers that question for you. Separate and distinct conditions precedent. Notice of a claim doesn't give us notice of the ability to locate and defend a lawsuit. So you're saying that even though the company, in my example, was aware of the claim, may have been aware of the lawsuit, absent a notice of the lawsuit from the insured, there would be no, let me finish. Sure. There would be no obligation to defend the lawsuit in my circumstance. They could get that notice not just from the insured. They could get that notice from a third-party claimant. They have to get the notice, though, from somebody to know that they have to come in and defend the lawsuit. Notice of a claim doesn't tell them it was filed in the Northern District of Illinois. Notice of a claim doesn't tell them that there are allegations of potential third-party property damage. Go ahead. Any further? Your Honor, no. I will rest on the briefs. I know that the court is familiar with the record. The briefs, we know oral argument is not a matter of right. It's a privilege. We thank you for your time today. For all the reasons argued in our briefs, we ask you to apply. Thank you. I'll try to be as straightforward as I can. There's a couple of points I wanted to just address before I get into the second part of my argument. Conceding whether or not this claim was covered, I want to make sure I'm very clear on this. At the time that we presented the information, the claim, to Phoenix Insurance Company, the damage to the insulators, to the other property damage, that already existed. It could have been found with a very simple investigation by the Phoenix Insurance Company. Our president's admission was that he did not know about the other property damage, and Phoenix is claiming that they didn't know about the other property damage. Phoenix did not know about the other property damage because they didn't try and find out about it. So I just want to make very clear about whether or not we were conceding that this claim should have been denied. A simple investigation would have realized that there was other property damage prior to March 10th. There's a claim by the experienced insurance counsel. Now, I will be open here. The litigation counsel is also my boss in this case, Bob Franco. Bob Franco is experienced insurance or litigation counsel. He was hired after the denial of the claim, hired in June or July of 2015. So that's in the briefs. Yes, just specifically to represent the company. So I just want to make sure. It's not like Franco hired an insurance counsel to examine these things and determine what was going on. The counsel has noted the March 12, 2015 Laura Pytel note. I will note one thing briefly. March 10th is the letter that is denying coverage. Any subsequent oral communications gets a little bit of a gray area. I will note there that the actual note says, I spoke with Mr. Albert. We discussed what our coverage opinion is. I advise this. He reminded me of that. I advise that this coverage opinion is only based on what information he provided out. Then it says, should a claim be pursued or suit filed, we can re-review coverage based on what Exxon is looking for. There's no indication that she actually communicated that information to him compared to that just being a note that she had for herself because when we go to the August 31st note that I have previously addressed, it says, will advise insured if one is satisfied to send in. Not will re-advise, not will remind. Will advise, indicating that she never advised him prior to that. We also know that she never advised him subsequent to that either because she never spoke to him. Counsel wants to talk about flat denials and non-flat denials. And it's humorous that we're dealing with this because this is the exact concern that we have with a decision that indicates that an insurance company can try and create a non-flat denial where they are allowed to deny coverage but still get all of their rights under the policy. Davis, which I think that this Court should formally adopt, doesn't have gradations. It has, did you deny? Yes. Then you are stopped. Otherwise, we're going to be in here for every case that there is a denial. We're going to have insurance companies denying, throwing a little bit of language there and fighting it out. Hopefully the insured never brings it up, I believe. So it's a big concern that we're even getting into flat versus non-flat denials. Regarding the actual language of the policy here, it says claim or suit. It doesn't say claim and suit. We like this insurance policy. At best, this is ambiguous language. The headline, the head note of the actual condition that this is under notes that it's for a remorse of occurrence, offense, claim or suit. The occurrence language itself notes that they want to know about occurrences or an offense that will result in a claim, not a claim or a suit. There is no difference, practically speaking, between a claim and a suit. They're both seeking money. A suit is just a formalized statute of limitations driven way to get the money that you want. They have notification of the claim. They have notification of the occurrence. It was all timely and said during any investigation they denied coverage explicitly and they left us to our own devices. That should not be what the law requires of an insurance company. And for that reason, we're asking that this Court reverse the district court and ultimately grant summary judgment to Pelco Structural. There's still the $64,000 question. Did the trial court make a finding that we can review? I was going to few good men his copy of the language just to review it. What I can tell you is this. The argument was in front of the judge exclusively. PQ, all these cases was in front of the judge. We don't have a written finding. We have a verbal direction where the judge noted that we are making these other claims. She did not specifically state that this is a flat versus non-flat denial. Worse, it's implicit in her decision that we had to give them notification two years afterwards and that that resolved all the situations. I know that you'll ultimately tell us in a written opinion whether or not that's right or not, but... The only answer is no. She didn't specifically talk about flat or non-flat. I believe it's implicit in what she said. And I thank you. Thank you, parties. Counsel, excellent job at oral argument and your briefs present obviously a very interesting issue. Give us a lot to consider. We'll take the case under advisement. Thank you very much.